Joseph McDONALD, Appellant,

v.

Charles BLACK, Appellee.

No. 86–1864.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1987.

Decided June 1, 1987.

Rehearing Denied July 1, 1987.

Rodney P. Cathcart, Lincoln, Neb., for appellant.

Mark D. Starr, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before BOWMAN and MAGILL, Circuit Judges, and HARPER,* Senior District Judge.

BOWMAN, Circuit Judge.

Joseph McDonald appeals from the District Court's[1] denial of his petition for a writ of habeas corpus, 661 F.Supp. 660. A Nebraska trial court convicted McDonald, who was sixteen years old at the time of his arrest, of first degree murder in the July 4, 1974 death of Lyle Ford. McDonald pursued a direct appeal in the Nebraska Supreme Court, where his conviction was affirmed. *State v. McDonald,* 240 N.W.2d 8 (Neb.1976). He then filed this petition for a writ of habeas corpus. McDonald asserts two grounds for relief. He first

argues that the failure of the police to comply with parental notification procedures under Neb.Rev.Stat. § 43–205.02[2] deprived him of his constitutional right to procedural due process.[3] He also claims that incriminating statements made by him and used at trial were obtained unconstitutionally, because he had not made a knowing and intelligent waiver of his constitutional rights under the Fifth Amendment. The District Court, based on the report and recommendation of a federal magistrate, held that even if the Nebraska police had failed to follow the appropriate parental notification procedures, this failure did not amount to a violation of due process. The court then held that McDonald's waiver of his Fifth Amendment rights was "knowing, intelligent and voluntary," and could not support a claim for habeas relief.

■ We have had occasion to examine similar constitutional claims based on alleged violations of parental notification statutes under both state, *Rone v. Wyrick,* 764 F.2d 532 (8th Cir.1985), and federal law, *United States v. White Bear,* 668 F.2d 409 (8th Cir.1982). We have observed that "the requirement of notification to parents does not implicate any constitutionally protected right." *Rone,* 764 F.2d at 535. Rather, such statutes are "only intended to furnish an additional safeguard to insure that the juvenile's basic right to due process is not violated." *Id.* Accordingly, even if the police fail to comply with a parental notification requirement, this fact

---

* The HONORABLE ROY W. HARPER, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

2. This section was in effect at the time of McDonald's 1974 arrest, but was repealed in 1981. The current version, containing substantially the same requirements, is contained in Neb.Rev. Stat. § 43–250 (Reissue 1984).

3. McDonald raised this issue in a Motion to Suppress in his state court trial, but the Nebraska Supreme Court refused to address the issue on direct appeal. There, the court held that "[t]he issue was not raised in the motion for a new trial nor presented to the trial court."

*State v. McDonald,* 240 N.W.2d 8, 15 (Neb.1976). McDonald's petition therefore presents some nice questions concerning exhaustion, procedural default, and cause and prejudice in the habeas context. However, we believe it would be a waste of judicial resources, and would serve no significant interests of federalism or comity to undertake an analysis of (and potentially apply) the exhaustion rule in this case. We do not believe that state law has a significant bearing on the constitutional claims in the petition, nor do we believe the claims are sufficiently meritorious to warrant remanding the case to the Nebraska courts for an opportunity to resolve them. We will therefore address the merits of McDonald's constitutional claims without regard to any exhaustion defense that may be available to the state. *See Granberry v. Greer,* — U.S. ——, ——–——, 107 S.Ct. 1671, 1673–1676, 95 L.Ed.2d 119 (1987).

alone is not sufficient to warrant habeas relief. *See also Vardas v. Estelle,* 715 F.2d 206, 208 (5th Cir.1983), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984). Special caution is of course required when analyzing the waiver of constitutional rights by juveniles, *In re Gault,* 387 U.S. 1, 45, 87 S.Ct. 1428, 1453, 18 L.Ed.2d 527 (1967); *see also Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), but this does not mean that every state procedural protection afforded minors is of constitutional dimension. Unless the state's failure to follow its criminal procedures deprives the defendant of fundamental fairness in his criminal trial, the federal constitution is not violated. *See Wallace v. Lockhart,* 701 F.2d 719, 729 (8th Cir.), *cert. denied,* 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983).

■ The state disputes McDonald's assertion that the police failed to adhere to the Nebraska parental notification statute, arguing instead that notification under a different provision, Neb.Rev.Stat. § 29–404.02, was applicable to and was complied with in this case.[4] We need not decide this issue of Nebraska law, because in any event the procedures followed did not render McDonald's state criminal trial fundamentally unfair. McDonald's parents were notified of his detention within several hours of his arrest, and incriminating statements made by McDonald prior to his father's arrival at the police station were excluded by the Nebraska trial court.[5] McDonald's later statements, which were admitted in evidence against him, were made only after he had consulted with his father and had been given ample opportunity to consult legal counsel. Upon arriving at the police station, McDonald's father advised him to tell the police what he knew about the murder. In these circumstances, we do not believe that McDonald's ability to prepare his defense was affected by any failure to notify his parents of his arrest under the strict terms of Neb.Rev.Stat. § 43–205.-02. *Cf. United States v. Doe,* 701 F.2d 819, 822 (9th Cir.1983) (due process rights may be violated where failure to notify parents impairs juvenile's ability to prepare for hearing).

■ McDonald also argues that the failure of the police to provide his father with a written statement detailing the charges against him violated his right to due process. According to McDonald, his father would not have advised him to talk to the police if the full extent of the charges had been known. McDonald points to nothing in the record even remotely suggesting that his father was ignorant of the charges. Rather, there is substantial evidence from which to infer that both McDonald and his father were fully aware of the severity of the charges. McDonald invoked his *Miranda* rights at the time of his first interrogation. Trial Transcript 39. Following the initial interrogation, but before making any statements that were used against him, McDonald asked his father the meaning of the word "homicide." *Id.* at 184. During police questioning McDonald had been asked directly, "Did you kill him?" *Id.* at 186. Before he advised his son to talk to the police, McDonald's father discussed the reasons for his son's detention with the prosecuting attorney. *Id.* at 158–59. While the exact contents of that discussion are not clear, there is no indication that the prosecutor attempted to discount the severity of the charges against McDonald. In addition, McDonald's brother, who accompanied his father to the police station, had been questioned by the police regarding McDonald's whereabouts on the evening of the murder. *Id.* at 33, 83.

McDonald consulted his father and was given the opportunity to consult a lawyer before police questioning resumed (and before he made any statements that were

---

**4.** Recent amendments to Neb.Rev.Stat. § 29–401 (Reissue 1985) now apparently require compliance with the parental notification provisions of Chapter 43 in arrests of juveniles under this section, but this version was not in effect in 1974.

**5.** For strategic reasons, McDonald's attorney later introduced the statements in evidence at trial, despite the trial court's ruling that the statements were not available to the prosecution under *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948).

later used against him). In these circumstances, we agree with the District Court that the failure to provide a written statement of the charges to McDonald's father, if the statutory requirement did indeed apply to McDonald's arrest, was merely a statutory violation which does not amount to a deprivation of constitutional due process. The failure had no impact on the fundamental fairness of McDonald's trial, or on his ability to prepare a defense to the charges, and therefore provides no basis for habeas relief.

McDonald next asserts that the incriminating statements he made to police officers after consulting with his father were involuntary and should have been suppressed at trial. He argues that his physical and mental condition, combined with his father's ignorance of the charges against him, rendered his waiver of his Fifth Amendment rights invalid. The Nebraska Supreme Court, on direct appeal, upheld the trial court's ruling that the statements were admissible, and found that the statements "were given voluntarily, knowingly and intelligently, and were not constitutionally defective." *State v. McDonald*, 240 N.W.2d at 14.

The District Court, examining the factual findings of the Nebraska courts in accordance with 28 U.S.C. § 2254(d) (presumption of correctness to state court factual findings); *see Sumner v. Mata*, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982) (per curiam) (citing *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)), independently arrived at the legal conclusion that McDonald's statements were knowing, intelligent, and voluntary, *cf. Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978) (voluntariness is legal conclusion subject to independent analysis in federal review of state court trial). Further repetition of the magistrate's comprehensive analysis of the voluntariness question (which was adopted by the District Court) would serve no purpose. We therefore affirm this portion of the District Court's opinion on the basis of the reasoning contained therein. *See* 8th Cir.R. 14.

The judgment of the District Court is AFFIRMED.