**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mario Edgardo ESCOBAR–GARCIA,
Defendant–Appellant.**

**No. 89–3042.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 25, 1989.

Decided Jan. 4, 1990.

Marilyn Bobula, Joseph P. Schmitz (argued), Office of the U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Donald Krosin (argued), Office of the Federal Public Defender, Cleveland, Ohio, for defendant-appellant.

Before KRUPANSKY and WELLFORD, Circuit Judges, and HARVEY, Senior District Judge.[*]

KRUPANSKY, Circuit Judge.

Defendant-appellant Mario Edgardo Escobar–Garcia appealed his jury conviction on one count of illegal entry into the United States in violation of 8 U.S.C. § 1326, re-entering the United States without the advance consent of the Attorney General.

In 1968, appellant was brought before a Special Inquiry Officer of the Immigration and Naturalization Service (SIO) for a hearing to show cause why he should not be deported, at which he was represented by counsel. At the conclusion of the hearings, the Special Inquiry Officer made the following inquiry of the appellant:

Q. From this decision you may appeal to the Board of Immigration Appeals. Do you wish to appeal?

A. No.

Consequently, appellant was ordered deported.

In 1970, appellant was once again arraigned before an SIO, charged with having re-entered the United States in 1969. At a hearing conducted February 25, 1970, appellant refused to be represented by

---

[*] The Honorable James Harvey, Senior District Judge for the Eastern District of Michigan, sitting by designation.

court-appointed counsel, and admitted he had re-entered the United States without the Attorney General's consent. The record disclosed that the appellant was interested in leaving the United States pursuant to expeditious deportation so that he could be married in his native land. At the conclusion of the hearing the following colloquy occurred between the SIO and the appellant:

Q. Mr. Escobar, that is my decision in your case, which has been translated for you, sentence by sentence, as I stated it. Do you understand it?

A. Yes I did.

Q. Do you wish to appeal from it, or do you accept it?

A. I think I accept it.

The Order to Show Cause and Notice of Hearing that was issued prior to the hearing contained the following statement:

When you appear you may, if you wish, admit that the allegations contained in the Order to Show Cause are true and that you are deportable from the United States on the charges set forth therein. Such admission may constitute a waiver of any further hearing as to your deportability. If you do not admit that the allegations and charges are true, you will be given reasonable opportunity to present evidence on your own behalf, to examine the Government's evidence, and

to cross-examine any witnesses presented by the Government.

A warrant of deportation was issued February 25, 1970 and appellant was deported on March 13, 1970.

On October 6, 1987, a Grand Jury for the United States District Court for the Northern District of Ohio returned an indictment which charged that on June 1, 1987, Escobar–Garcia was found to be "in the United States, in Cleveland, Ohio, without the advance consent of the Attorney General ... in violation of" 8 U.S.C. § 1326. The criminal indictment, as it must, alleged that appellant was arrested and deported in 1968 and 1970. The district court overruled appellant's motion to dismiss the indictment, specifically finding that the deportation orders were not procedurally defective, and the appellant's waiver of his right to appeal in both 1968 and 1970 were intelligently considered and entered. The court concluded that the defendant was not deprived of appellate review of his deportation and that the government could, accordingly, rely on the outcome of those proceedings as reliable proof of an element of the criminal offense charged pursuant to 8 U.S.C. § 1326.[1]

At the conclusion of the trial, the court submitted special interrogatories to the jury, as well as a general verdict question.[2]

---

1. 8 U.S.C. § 1326 states in pertinent part:
Any alien who—
   (1) has been arrested and deported ... and thereafter;
   (2) enters, attempts to enter, or is at any time found in the United States, unless (A) prior to his reembarkation ... or his application for admission ... the Attorney General has expressly consented to such alien's reapplying for admission ... shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

2. The special verdict form was substantially as follows:

JURY VERDICT

We, the jury, unanimously return the following special and general verdict:
   1. Has the government proved beyond a reasonable doubt that Mario Edgardo Escobar–Garcia was an alien?
      Answer: _____
   2. Has the government proved beyond a reasonable doubt that Mario Edgardo Esco-

bar–Garcia was deported from the United States on or about October 18, 1968?
      Answer: _____
   3. Has the government proved beyond a reasonable doubt that Mario Edgardo Escobar–Garcia was deported from the United States on or about March 13, 1970?
      Answer: _____
   4. Has the government proved beyond a reasonable doubt that Mario Edgardo Escobar–Garcia was found present in the United States, in the Northern District of Ohio, Eastern Division, on or about June 1, 1987?
      Answer: _____
   5. Has the government proved beyond a reasonable doubt that, at the time Mario Edgardo Escobar–Garcia was found in the United States, the Attorney General had not expressly consented to his readmission?
      Answer: _____
   6. We, the jury, find Mario Edgardo Escobar–Garcia as charged in the indictment to be:

_____

_____
                                    Foreperson

The jury answered all of the questions with an affirmative "yes" and the court entered a judgment of guilty on January 3, 1989, sentencing appellant to two years imprisonment. Escobar–Garcia filed a timely notice of appeal.

On appeal, appellant has charged that pursuant to the dictates of the Supreme Court in *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), he was deprived of procedural due process because the SIO failed to advise him of his right to a "judicial review" in each of his earlier deportation decisions as opposed to generally informing him of a "right to appeal" at the conclusion of the hearings. Appellant's argument is misplaced because the teachings of *Mendoza–Lopez* apply to cases which involve fundamentally unfair proceedings before an administrative agency.

In *Mendoza–Lopez,* the government *conceded* a fundamentally unfair proceeding before the administrative agency.[3] *Mendoza–Lopez,* 107 S.Ct. at 2153 n. 8. Appellant in the instant case does not charge a fundamentally unfair administrative hearing before the Immigration and Naturalization Service in either of his previous deportation hearings in 1968 and 1970. At the first hearing he was represented by counsel, and his refusal to exercise his right to appeal was knowledgeable and unequivocal. Should appellant's appellate waiver entered at the conclusion of the second administrative proceeding be considered as equivocal because of his reply to the SIO's inquiry concerning his desire to appeal, then in that event, the court's attention is directed to existing precedent that a single deportation, the one that occurred in 1968, standing alone would satisfy a conviction under § 1326. Moreover, *Mendoza–Lopez* does not mandate the SIO to advise an accused of a right to a "judicial appeal." The explanations of the SIOs at the conclusion of

both the 1968 and 1970 deportation hearings advising Garcia of his right to appeal the deportation order satisfied *Mendoza–Lopez* and provided him with due process of notice of his appellate rights. Moreover, in both instances, he expressed no desire to appeal.

Although this court recognizes the disfavor with which other courts view the use of special interrogatories in criminal cases, this court is aware that exigent circumstances could arise that could justify their implementation. As the record of this case indicates, the district court neither abused its discretion by submitting special interrogatories to the jury, nor did it prejudice the defendant. This resolution should not be construed as an endorsement of the trial court's submission of special interrogatories in criminal cases in the interest of judicial economy.

For the foregoing reasons, the judgment entered by the district court pursuant to the jury verdict in the instant case is AFFIRMED.

---

**3.** For discussions of the applications of the "fundamentally unfair" doctrine, see *United States v. Holland,* 876 F.2d 1533 (11th Cir.1989); *United States v. Polanco–Gomez,* 841 F.2d 235 (8th Cir. 1988); *United States v. Palacios–Martinez,* 845

F.2d 89 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 119, 102 L.Ed.2d 92 (1988); *United States v. Zaleta–Sosa,* 854 F.2d 48 (5th Cir.1988); *United States v. Saucedo–Velasquez,* 843 F.2d 832 (5th Cir.1988).